Filed 8/1/13  P. v. Aguirre CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>EDWARDO PELAYO AGUIRRE,<br><br>　　Defendant and Appellant. | F064426<br><br>(Super. Ct. No. 11CM7281)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  James LaPorte, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found appellant Edwardo Pelayo Aguirre guilty of first degree burglary (Pen. Code, § 459);[1] assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)); and battery resulting in serious bodily injury (§ 243, subd. (d)). Two enhancement allegations for personal infliction of great bodily injury were found true in connection with the assault and battery convictions. The trial court sentenced Aguirre to a total prison term of eight years.

Aguirre raises four issues on appeal. First, he contends the trial court should have stricken one of the great bodily injury enhancements in accordance with section 12022.7, subdivision (g), because the infliction of such harm is an element of felony battery under section 243, subdivision (d). Second, Aguirre claims the sentence imposed for his burglary conviction should have been stayed pursuant to section 654. The appeal is well taken on both grounds.

The third issue is one of alleged instructional error on the burglary charge. Finally, Aguirre claims the trial court miscalculated his presentence custody credits. These two contentions are meritless. We affirm in part, and reverse in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

The victim in this case is Jose Vasquez. In approximately April 2011, Aguirre allegedly confronted Mr. Vasquez and demanded he pay him $5,000. A second confrontation occurred on May 26, 2011 at Mr. Vasquez's residence in Corcoran.

Aguirre went to Mr. Vasquez's home accompanied by a co-defendant named Leobardo Alvarez. Aguirre and Alvarez initially encountered Mr. Vasquez at the threshold of an open doorway to the house. The men entered the house and proceeded to strike Mr. Vasquez repeatedly until he lost consciousness. Mr. Vasquez later received

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

2.

medical treatment for a fractured nose and other injuries.  Mr. Vasquez's aunt and three of his minor children were inside the house at the time of the attack.

On July 14, 2011, the Kings County District Attorney filed a criminal information charging Aguirre with first degree burglary of an inhabited dwelling (Count 1), attempted extortion (§ 524; Count 2), criminal threats (§ 422; Count 3), felony assault by means of force likely to produce great bodily injury (Count 4), and felony battery resulting in serious bodily injury (Count 5).  The information included enhancement allegations for personal infliction of great bodily injury within the meaning of section 12022.7 as to Counts 4 and 5.  It was further alleged that Aguirre had served a prior prison term within the meaning of section 667.5, subdivision (b).  Aguirre admitted the latter allegation during trial, resulting in a true finding by the trial court.

On November 18, 2011, a jury found Aguirre guilty on Counts 1, 4, and 5.  He was acquitted of attempted extortion and criminal threats under Counts 2 and 3.  The jury returned true findings for the section 12022.7 enhancement allegations under Counts 4 and 5.

Aguirre was sentenced on December 19, 2011.  Using Count 4 as the base term, the trial court sentenced him to eight years in prison, comprised of the upper term of four years, plus three years for the great bodily injury enhancement and one additional year for the prior prison term enhancement.  The upper term of six years was imposed for the burglary conviction under Count 1, to be served concurrently with Count 4.[2]  Aguirre was

---

[2] The trial court orally imposed a six-year sentence, "plus the one year," which would result in a seven-year term for Count 1.  The additional year was stated in reference to the prior prison term enhancement under section 667.5, subdivision (b), which had already been calculated into the eight-year sentence for Count 4.  Prior prison term enhancements do not attach to particular counts, and may be imposed only once. (*People v. Tassell* (1984) 36 Cal.3d 77, 90, overruled on other grounds in *People v. Ewoldt* (1994) 7 Cal.4th 380, 401); *People v. Smith* (1992) 10 Cal.App.4th 178, 181-183 (*Smith*).)  The abstract of judgment correctly reflects a six-year prison term for Count 1.  To the extent the trial court's oral pronouncement at sentencing conflicts with the abstract

sentenced under Count 5 to the upper term of four years, plus three years for the great bodily injury enhancement and one year for the prior prison term, with the entire sentence stayed pursuant to section 654.[3]

## DISCUSSION

### I. Burglary

### A. No Prejudicial Error in the Jury Instructions

The de novo standard of review applies to Aguirre's claim of instructional error. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "In deciding whether an instruction is erroneous, we ascertain at the threshold what the relevant law provides. We next determine what meaning the charge conveys in this regard. Here the question is, how would a reasonable juror understand the instruction[?] In addressing this question, we consider the specific language under challenge and, if necessary, the charge in its entirety. Finally, we determine whether the instruction, so understood, states the applicable law correctly." (*People v. Warren* (1988) 45 Cal.3d 471, 487, citations omitted.)

Burglary is defined by statute as the entry into a house or other specified structure with intent to commit larceny or any felony. (§ 459.) "In a burglary prosecution, complete and accurate jury instructions include the definition of each felony the

---

of judgment, we strike the duplicate enhancement pursuant to our authority to modify an unauthorized sentence. (§ 1260; see also, *People v. Scott* (1994) 9 Cal.4th 331, 354.) When the trial court prepares its amended abstract, it should again indicate Aguirre was sentenced to six years in prison under Count 1.

[3] See footnote 2 above. Imposition of an additional one-year sentence pursuant to section 667.5, subdivision (b), was improper because the enhancement had already been imposed and calculated under Count 4. If such enhancements refer to the same prior prison term, duplicate enhancements should be stricken even where the sentences are imposed concurrently. (*Smith*, *supra*, 10 Cal.App.4th at pp. 182-183.) The one-year sentence imposed under Count 5 pursuant to section 667.5, subdivision (b), is stricken. The amended abstract of judgment shall reflect this modification.

4.

defendant is alleged to have intended to commit upon entry into the burglarized structure." (*People v. Rathert* (2000) 24 Cal.4th 200, 204.)

The trial court instructed the jury using CALCRIM No. 1700. The instruction stated, in pertinent part: "Each defendant is charged in Count 1 with burglary in violation of Penal Code section 459. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant entered a house; [¶] AND [¶] 2. When he entered a house, he intended to commit assault and/or attempted extortion. [¶] To decide whether the defendant intended to commit assault and/or attempted extortion, please refer to the separate instructions that I have given you on that crime in instruction Numbers 875 and 1830." The cross-references directed the jury to standard form instructions for assault with force likely to produce great bodily injury under section 245 (CALCRIM No. 875) and extortion by threat or force under section 518 (CALCRIM No. 1830).

Since he was acquitted of attempted extortion under Count 2, Aguirre believes the jury convicted him of burglary for his entry into the victim's home with intent to commit an assault therein. This is a logical conclusion. He notes, however, that simple assault is a misdemeanor which cannot serve as the predicate offense for burglary. (§ 241, subd. (a).)

Despite a cross-reference to the instruction for felony assault within the meaning of section 245, the burglary instruction referred to "assault" without further specifying the nature of the crime. Aguirre argues the jury likely interpreted this language to include simple assault as well as more serious forms of the offense. He contends "there is no reason to believe the jury understood the word 'assault,' in the burglary instruction to refer to … assault with a means of force likely to cause great bodily injury." We find no merit in these arguments.

The prosecution alleged felony assault and attempted extortion as the only target offenses of burglary under Count 1. The parties agreed to omit any jury instructions pertaining to simple assault, i.e., misdemeanor assault. Defense counsel requested the

5.

omission of such instructions for tactical reasons. He believed instructing the jury on simple assault as a lesser included offense "would be tantamount to admitting that an assault did occur," and undermine Aguirre's testimony that he struck the victim in self-defense. The request was granted, thus removing the issue of misdemeanor assault from the jury's consideration.[4]

Having been told to rely upon CALCRIM Nos. 875 and 1830 in deciding the burglary charge, the jury was given the definition of each felony Aguirre was alleged to have intended to commit upon entry into the victim's home. If Aguirre believed the instructions required clarification or modification, it was incumbent upon him to ask for revisions. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1140.) Instead, defense counsel stated, "that in reviewing the instructions as proposed to be given by the court they appear in my opinion to be appropriate for this particular case."

We cannot infer from the record any likelihood that the jury was misled to believe it could find Aguirre guilty of burglary based on intent to commit misdemeanor assault, rather than assault with force likely to produce great bodily injury, or some other felony. The concept of misdemeanor assault was never explained to the jury or even mentioned in its presence. Furthermore, the jury found Aguirre guilty of felony assault under Count 4.

---

[4] Trial courts have a sua sponte duty to instruct the jury on lesser included offenses when there is sufficient evidence to warrant such an instruction. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) This is true "even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." (*Ibid.*) However, the doctrine of invited error applies "if the court accedes to a defense attorney's tactical decision to request that lesser included offense instructions not be given. Such a tactical request presents a bar to consideration of the issue on appeal." (*People v. Prince* (2007) 40 Cal.4th 1179, 1265, citations omitted.) Due to defense counsel's strategic efforts to present the jury with an all-or-nothing choice on the issue of felony assault under Count 4, we need not decide whether the trial court erred by failing to instruct on simple assault as a lesser included offense.

Our analysis is guided by the rule that jurors are presumed to be intelligent persons "capable of understanding and correlating all jury instructions which are given." (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111, internal quotation marks omitted.) "'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.'" (*Id.* at p. 1112, quoting *People v. Laskiewicz* (1986) 176 Cal. App. 3d 1254, 1258.) Applying these principles to the underlying facts and circumstances, we find no prejudicial error in the instructions given on the charge of burglary. All evidence indicates the jury followed the court's directions to consider only those felony offenses defined in CALCRIM Nos. 875 and 1830 in deciding whether Aguirre acted with the requisite criminal intent at the time of entry into the victim's home.

**B. Aguirre's Sentence Under Count 1 Must Be Stayed Pursuant to Section 654**

Aguirre was sentenced to six years in prison for the burglary conviction, to be served concurrently with the eight-year total term of imprisonment imposed under Count 4 for assault with force likely to produce great bodily injury. Respondent concedes that both convictions arose from an indivisible course of conduct, and the shorter of the two sentences must be stayed under section 654. The concession is appropriate.

Section 654 prohibits multiple punishments for crimes arising out of a single act or indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294 (*Hester*).) The statute provides, in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) In particular, section 654 has been held to preclude punishment for both burglary and felony assault where, as in this case, the burglary is based upon an entry with intent to commit the felonious assault. (*Hester*, *supra*, 22 Cal.4th at p. 294; *People v. Radil* (1977) 76 Cal.App.3d 702, 713.)

The defendant's intent and objective determines whether two crimes are part of an indivisible course of conduct for purposes of section 654. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129 (*Islas*).) Such findings will be upheld on appeal if supported by substantial evidence. (*Ibid.*)

To the extent the trial court impliedly found section 654 was not applicable to Counts 1 and 4, those findings cannot be reconciled with the evidence. The jury instructions presented only two choices for the target offense of burglary; felony assault and attempted extortion. The jurors were told: "You may not find the defendant guilty of burglary unless you all agree that he intended to commit one of those crimes at the time of entry." Aguirre was acquitted of attempted extortion, but found guilty of felony assault and burglary. Under these circumstances one must infer Aguirre's burglary conviction was predicated upon his intent to commit the felonious assault perpetrated against the victim.

The erroneous failure to stay execution of a sentence under section 654 constitutes an unauthorized sentence. (*Islas*, *supra*, 210 Cal.App.4th at p. 129, fn. 3.) The trial court must correct the error on remand.

## II. Sentencing Enhancement for Infliction of Great Bodily Injury

Section 12022.7, subdivision (a), provides a three-year enhancement for personal infliction of great bodily injury during the commission of a felony. Such an enhancement was alleged and found true in relation to Aguirre's convictions for assault by force likely to produce great bodily injury (Count 4) and battery resulting in serious bodily injury (Count 5). Under Count 5, the trial court imposed a three-year prison term for the great bodily injury enhancement and stayed the sentence pursuant to section 654. We agree

with Aguirre that the enhancement should have been stricken, rather than stayed, because of the limitations expressed in section 12022.7, subdivision (g).

Battery is punishable as a felony under section 243, subdivision (d), when "serious bodily injury is inflicted" upon the victim. The statute defines "serious bodily injury" as "a serious impairment of physical condition" and provides a list of qualifying injuries. (§ 243, subd. (f)(4).) For purposes of section 12022.7, "'great bodily injury' means a significant or substantial physical injury." However, subdivision (g) of section 12022.7 states the enhancement "shall not apply if infliction of great bodily injury is an element of the offense."

California courts have found the terms "serious bodily injury" and "great bodily injury" to be essentially synonymous. (See, e.g., *People v. Sloan* (2007) 42 Cal.4th 110, 117 ["'"[s]erious bodily injury" is the essential equivalent of "great bodily injury."'"]; *People v. Beltran* (2000) 82 Cal.App.4th 693, 696 ["The terms … have substantially the same meaning."].) In *People v. Hawkins* (1993) 15 Cal.App.4th 1373, the Second District Court of Appeal held that "great bodily injury, as defined in section 12022.7, is an element of the crime of battery under section 243, subdivision (d)." (*Id*. at p. 1376.) It follows, therefore, that subdivision (g) of section 12022.7 precludes application of the enhancement to a section 243 conviction for battery resulting in serious bodily injury.

Respondent identifies an ostensible split of authority on this issue. An opinion by the Sixth District Court of Appeal, *In re Jose H.* (2000) 77 Cal.App.4th 1090 (*Jose H.*), affirmed a trial court's refusal to strike a great bodily injury enhancement in relation to the defendant's battery conviction under section 243, subdivision (d). The ruling was based upon the tactical reasons offered by the prosecution to justify charging the enhancement, without any consideration or acknowledgement of the restrictions set forth in subdivision (g) of section 12022.7. (*Jose H.*, *supra*, 77 Cal.App.4th at p. 1096.) An opinion issued by the Second District in 2003, coincidentally entitled *People v. Hawkins,* disagreed with the holding in *Jose H.* and criticized its analysis. (*People v. Hawkins*

9.

(2003) 108 Cal.App.4th 527, 531 ["The proffered purpose for charging the enhancement was unfounded…. In any event, section 12022.7 by its own terms does not apply to crimes in which infliction of great bodily injury is an element of the offense…and the statute is not intended to be utilized for any purpose other than as a sentence enhancement.].)

Respondent asks us to follow *Jose H.*, primarily because the opinion was cited by the California Supreme Court in a footnote to *People v. Feyrer* (2010) 48 Cal.4th 426 (*Feyrer*).  This rationale is not persuasive given the context of the citation.  *Feyrer* involved a defendant who pled no contest to felony assault by means of force likely to produce great bodily injury (§ 245) and admitted to a section 12022.7 enhancement for infliction of great bodily injury.  (*Feyrer, supra,* 48 Cal.4th at p. 430).  Unlike battery under section 243, subdivision (d), the infliction of great bodily injury is not an element of felony assault under section 245.  (*People v. Parrish* (1985) 170 Cal.App.3d 336, 343.)

*Feyrer* concluded that the defendant's plea agreement, which admitted the more serious form of a wobbler offense, did not prohibit the trial court from subsequently declaring the crime a misdemeanor pursuant to section 17, subdivision (b)(3).  (*Feyrer, supra,* 48 Cal.4th at pp. 430-431.)  Footnote 8 of the opinion cites cases which illustrate the prosecutorial strategy of using section 12022.7 enhancements to "qualify and perfect" felony offenses as strikes for purposes of California's Three Strikes law.  (*Id*. at p. 442, fn. 8.)  The footnote is dicta, and contains no analysis of the restrictive language found in subdivision (g) of section 12022.7.

The California Supreme Court's decision in *People v. Ahmed* (2011) 53 Cal.4th 156 (*Ahmed*) offers better guidance on the issue Aguirre has raised in this appeal.  The *Ahmed* case addressed the question of whether section 654 can be used to stay sentencing enhancements arising from circumstances of the underlying crime (a category which includes section 12022.7 enhancements).  (*Ahmed*, *supra*, 53 Cal.4th at p. 159.)  The opinion states: "[A] court deciding how multiple enhancements interact should first

10.

examine the specific sentencing statutes. If, as is often the case, these statutes provide the answer, the court should apply that answer and stop there. Because specific statutes prevail over general statutes, consideration of the more general section 654 will be unnecessary. Only if the specific statutes do not provide the answer should the court turn to section 654." (*Id*. at pp. 159-160.)

With respect to the interaction between section 12022.7 and battery under section 243, subdivision (d), the enhancement statute provides clear and unambiguous instructions. A great bodily injury enhancement "*shall not apply* if infliction of great bodily injury is an element of the offense." (§ 12022.7, subd. (g), italics added.) Under the rules of statutory interpretation, we must "'presume the lawmakers meant what they said, and the plain meaning of the language governs.'" (*Allen v. Sully-Miller Contracting Co*. (2002) 28 Cal.4th 222, 227.)

Subdivision (g) of section 12022.7 does not authorize trial courts to apply the enhancement to a conviction for battery resulting in serious bodily injury and then stay the sentence pursuant to section 654. Quite the opposite is true. The enhancement is deemed inapplicable because the infliction of great bodily injury is an element of battery under section 243, subdivision (d). (§ 12022.7, subd. (g).) Since the trial court allowed the jury to decide the section 12022.7 allegation with regard to Count 5, it had no choice but to strike the enhancement after the jury returned its true finding. Failure to do so was error, and the enhancement must be stricken.

### III.     Aguirre is not Entitled to Additional Custody Credits

Aguirre was sentenced on December 19, 2011. The trial court found he was entitled to 205 days of credit for actual presentence custody, plus 30 days of conduct credit, for a total presentence custody credit of 235 days. Conduct credits were apparently calculated at a rate of 15% of the period of presentence confinement pursuant to sections 2933.1 and 667.5. Aguirre contends he is owed additional presentence credits based upon equal protection principles in light of the amendments to section 4019 that

11.

went into effect October 1, 2011.  (Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35, eff. Sept. 21, 2011, operative Oct. 1, 2011.)  We have rejected such contentions in the past (see, e.g., *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*)) and have no reason to depart from precedent in this case.

Aguirre's convictions for first degree burglary, felony assault, and felony battery each qualified as violent felonies within the meaning of section 667.5.  (§ 667.5, subds. (c)(8), (15), (21).)  These convictions triggered the application of section 2933.1, subdivision (c).  Subdivision (c) states: "Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail … following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement…."

Section 4019 provides for presentence credits for worktime and good behavior, collectively referred to as "conduct credit," and specifies the rate at which such credit can be earned.  (§ 4019, subds. (a), (b) & (c); *People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.)  "In conjunction with the '2011 Realignment Legislation addressing public safety,' section 4019 was amended to provide for deductions for every four days of confinement, so that if all possible days are earned, four days will now be deemed served for every two days of actual confinement."  (*Ellis*, *supra*, 207 Cal.App.4th at p. 1549, internal citations omitted).  This formula applies "to prisoners who are confined to a county jail … for a crime committed on or after October 1, 2011.  Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."  (§ 4019, subd. (h).)

As respondent points out in its brief, Aguirre's arguments fail to consider the provisions of section 2933.1.  Under the plain language of section 2933.1, subdivision (c), the statute overrides section 4019 when a defendant's convictions qualify as serious felonies under section 667.5.  Even if Aguirre could overcome this hurdle, he would need

to establish grounds for the retroactive application of section 4019 to May 2011 when his crimes were committed.

Under section 4019, subdivision (h), the statute's changes to the calculation of custody credits are exclusively prospective. In *Ellis*, we concluded the intent of the Legislature "was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011." (*Ellis*, *supra*, 207 Cal.App.4th at p. 1553.) We further held that the restrictions in subdivision (h) do not violate principles of equal protection. (*Id*. at pp. 1551-1553.)

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally." (*People v. Brown* (2012) 54 Cal.4th 314, 328 (*Brown*).) Contrary to Aguirre's arguments, the amendments to section 4019 effective October 1, 2011, do not treat similarly situated groups in a disparate manner. (*Ellis*, *supra*, 207 Cal.App.4th at pp. 1551-1552.) "[P]risoners who serve their pretrial detention before [the] law's effective date, and those who serve their detention thereafter, are not similarly situated with respect to the law's purpose." (*People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9.)

The amendments in question address "*future conduct* in a custodial setting by providing increased incentives for good behavior." (*Brown*, *supra*, 54 Cal.4th at p. 325.) The purpose of the statute is not served by rewarding prisoners who served time in custody prior to the effective date of the incentives. (*Id.* at p. 329.) "[The] incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application." (*Ibid*., citation and quotation marks omitted.)

Aguirre's offenses were committed several months prior to the effective date of the section 4019 amendments. The statute explicitly prohibits retroactive application. Aguirre's equal protection arguments fail in light of our holding in *Ellis* and the California Supreme Court's analysis in *Brown*.

## DISPOSITION

The judgment is reversed in part, as specified herein, and remanded to the trial court with instructions to stay imposition of sentence under Count 1 pursuant to section 654 and to strike the section 12022.7 enhancement under Count 5. As noted above, the one-year enhancement for Aguire's prior prison term under section 667.5, subdivision (b), can only be imposed once. We therefore strike the duplicate enhancements that were imposed as to Count 1 and Count 5. The judgment is affirmed in all other respects.

We note the current abstract of judgment already indicates that a six-year sentence was imposed as to Count 1 and stayed under section 654, although this is inconsistent with the trial court's oral pronouncement at sentencing. In any event, the abstract must be amended to reflect the striking of the 667.5 enhancement and the section 12022.7 enhancement as to Count 5. The trial court is directed to prepare an amended abstract of judgment and to send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

_____
Gomes, Acting P.J.

WE CONCUR:


_____
Poochigian, J.


_____
Detjen, J.

14.